Our next case is 4-18-05-47. Cain v. DeWeert. We have for the appellant, Craig Unrath. Mr. Unrath. And for appellee, James Gidsky. Mr. Gidsky. Good morning. Mr. Unrath. Good morning, your honors. My name is Craig Unrath. I wrote this on Dr. Thomas DeWeert. We have three primary arguments in this case. First, that the trial court erred in refusing to instruct the jury on the sole proximal causation. Second, that the claims of Brasitsa and her old mother should have been dismissed on the correctional verdict. We believe that they were highly prejudiced when the jury was instructed on that theory. They had no basis in the evidence. And third, that the verdict was against the manifest way of the evidence. Now, when I get a draft of a brief in a case like this, I fully acknowledge that the manifest way of the evidence is an extremely high standard. Any evidence in the record tending to support the defendant's case is usually sufficient to affirm a manifest way. But I do it because it provides context. It provides a background for the case so that the other arguments can be placed better understood. This particular case is not like that. After going through the voluminous record on this case, I can give you absolutely 100% defense that Dr. DeWeert did nothing wrong. He followed the standard of care at every juncture. I find this jury's verdict to be completely out of line with the evidence. And I can draw the reason for that, I believe, is due to the trial court's errors in this case in instructing the jury. Now, Ms. McCain died of sepsis. Now, this is an infection commonly referred to as a blood poisoning, secondary to a severe case of pancreatitis. Now, she contracted pancreatitis as a result of Dr. DeWeert's procedure known as an endoscopic retrograde phalangeal pancreatography. And do not ask me to repeat that. I'm going to do it for one final moment. Now, it's undisputed that pancreatitis is a well-known complication of the ERCP procedure. Merely performing the procedure in and of itself can cause pancreatitis. It can occur in the absence of negligence, and it does occur in the absence of negligence, a fact that plaintiff's experts agree with. Now, the defense presented substantial evidence in this case, demonstrating that Ms. McCain's pancreatitis was resolved and under conservative care at Barnes-Jewish Hospital. Medical records established that she was getting better. She had been released from the ICU. Her respiration was normal. White blood cell count was normal. She had no fever. This was a patient who was on demand. And then Dr. Hawkins stepped in and decided to perform an open abdominal procedure. Now, the mortality rate for a severe case of pancreatitis is roughly 3%. When you perform an open abdominal procedure on a patient suffering from severe pancreatitis, that mortality rate jumps to 50%. Is that sufficient to allow the trial court to give the sole proximate cause instruction? Absolutely, Your Honor. We are not required to prove that Dr. Hawkins ultimately caused her demise. Don't you need expert testimony to support the giving of a sole proximate cause instruction in a medical malpractice case? If this court were to adopt that rule of law, it would essentially mean that this burden of proof has been shifted from the plaintiff to the defendant. Why is that? Because you would be asking us to prove with expert testimony that he didn't use proximate causation. There's a distinction between having to prove and having to present evidence in support of an instruction. Would you agree? Absolutely. So, what evidence would support the giving of a sole proximate cause instruction in a medical malpractice case? Some evidence, and under the Supreme Court's rulings, that evidence can even be insubstantial evidence, tending to show that the injury was caused by a third person other than the defendant. Is that precedent that involves medical malpractice? In the Leonardi case, it is not, but I cannot see any reason for departing from that rule. And the reason is this, because the Leonardi decision made it clear, as well as the McDonald-McPartland decision, that the burden of proof never shifts to the defendant. But again, you're talking about burden of proof. We're talking about evidence, competent evidence, that would support the giving of an instruction. Evidence here in a medical malpractice case, you would think, would have to come from a medical expert when it deals with the issue of causation. That's something beyond the kin of a juror, even a layperson. And we did have medical testimony, expert testimony, stating that this surgery was not warranted. Well, that would relate to standard of care, but now you're talking about causation. For sole proximate cause instruction, you're talking about causation. Apples and oranges. I don't see the distinction, Your Honor. If we have some evidence showing, demonstrating, even insubstantial evidence, demonstrating that the proximate cause was a third party, that is sufficient. You said a proximate cause. You just said a proximate cause. What you're arguing on appeal is that you had evidence that it was the sole proximate cause. I misspoke, Your Honor. You're absolutely correct. I meant to say the sole proximate cause. In essence, this is something that the Leonardi decision makes clear. The sole proximate causation argument, this is not one where we are out there to prove that a third party caused the accident. What we are there to show is that our client was not at fault, and there is evidence showing that a different party was the sole proximate cause, the cause of this injury. And in this case, we have evidence coming straight from the plaintiff's experts themselves, stating that, one, pancreatitis can occur without a breach of the standard of care, that it can occur without negligence. If you look at the admission sheet at Barnes-Jewish Hospital, they list a pancreatitis as a known complication. This is something that might happen. They also claim that there was a perforation of the pancreas. Well, there's no evidence in the radiological sense, and there was no treating physician that ever found a perforation, but none of that matters because plaintiff's experts themselves, Dr. Clark, stated that you can have a perforation of the pancreas even where there is no, in the absence of negligence. During the performance of ERCP? Absolutely. And it was in that context? Absolutely, yes. So we have a right to inform the jury of our theory of the case. We put forward substantial evidence that Ms. Cain's entire medical condition changed drastically the moment this unwarranted medical procedure was performed by Dr. Hawkins. Absent an expert witness, how is the jury to determine that these other causes that are being pointed to are not simply a proximate cause versus sole proximate cause? How do you make that leap to say, well, these other things happened without an expert to say, in my professional opinion, this was the sole proximate cause as opposed to all of these other things that you hear about? Again, that has never been the rule standard that the Illinois Supreme Court has followed. The Illinois Supreme Court has never placed the burden of proof on the defendant. Again, you very artfully turn it to a burden of proof, and that's not the issue here. It's simply that if we know as a matter of law that it can't be just a proximate cause, that it must be the sole proximate cause, how do you make the leap to what constitutes sole proximate cause of something as complicated as medical procedures to a jury without an expert to say so? We had a number of experts state unequivocally that this open abdominal surgery should not have been performed. They also testified that her condition changed radically from before the surgery to afterwards. The fact that we don't have an expert that is saying this is the proximate cause of the injury, Your Honor, if this court adopts that rule, it will lie in direct conflict with both the McPartland case, the McDonald case, and the Leonhardt case. It is not the law in Illinois to play them. Your Honor, you're drawing a distinction between proximate causation and burden of proof. I don't believe there is a distinction there. You're asking us to put an expert up who will testify. Dr. Hawkins, his surgery is the proximate cause of her death, and that is placing the burden of proof on the defendant, and that is unacceptable. Well, counsel, I want to just run this through in my mind, what happens at trial, what happened in this trial, and how it is that the jurors are capable of reaching the conclusion that the conduct at Barnes was the sole proximate cause, and to be able to do that without the assistance of medical testimony, expert medical testimony. Now, are you saying that when it comes to the giving of an instruction, that the quality of evidence is different in terms of what's necessary to support the giving of the sole proximate cause instruction than if this were a plaintiff's burden to establish causation? In essence, it sounds like it is. It sounds like you're saying that a juror should be capable of, by deduction, concluding from various facts, not opinion testimony, but various facts that have been testified to that an individual or entity's conduct was the sole proximate cause, whereas if we were talking about, say, the plaintiff having to prove his or her case, medical testimony would be required in order to establish causation. It sounds like, in terms of what the jury was to do here, in what you're proposing would be to do away with the necessity of expert testimony for them to be able to arrive at that conclusion that the barn's conduct was the sole proximate cause. Help me with that. The jury was never called upon to determine that Dr. Hawkins was guilty or filed for negligence. We're not talking about standard of care here. You're talking about the sole proximate cause instruction. Had it been given, the jury is back in the jury room. What is it that they're to look at in what had been presented to support their finding that Dr. Hawkins' surgery was the sole proximate cause of her death? Testimony from plaintiff's experts stating unequivocally that Dr. DeWart's pancreatitis can arise in the absence of negligence. Testimony from plaintiff's experts that the perforation of the pancreas, even if that occurred and that is highly disputed, can occur in the absence of negligence. And the fact that this patient was proven, that we have expert testimony stating that the open abdominal surgery was not recommended, should not have been done, and that her medical condition changed dramatically from a patient that was improving, steadily improving, to one who was on the verge of death and spent the next few months trying to fight an infection that arose directly from that abdominal surgery. Now, you're suggesting, Your Honor, respectfully, that we have an expert testimony stating, on the record, Dr. Hawkins was the proximate cause. Think about how this is going to apply in other cases, construction cases, scaffolding cases, architecture, building collapses. Is that beyond the cap? Think of how many other different scenarios this would apply. Let's just stick with medical malpractice because we're having to deal with this particular case. Well, the reason I bring this up, Your Honor, is that should this Court adopt that rule that we need expert testimony stating explicitly that Dr. Hawkins was the proximate cause? You keep saying that we're talking about identifying a person. My question really is more general than that. How is a jury to determine that some other set of circumstances is, in fact, the sole proximate cause as opposed to a proximate cause? They've heard all of this medical testimony throughout the trial saying this causes this, this causes that. Now you're saying that the jury is supposed to take this conglomerate of causes that they're being informed of and somehow attribute it to someone other than the defendant, and it doesn't have to be an identified person. If that's what you're saying is sufficient for a long-form sole proximate cause instruction, my question is how is the jury supposed to do that without someone saying this was not the sole proximate cause, this was the sole proximate cause? Not identifying an individual, but just identifying what transpired. Our response to that is based on Illinois Supreme Court precedent stating that all we need is some evidence supporting our theory of the case, and that evidence can be insubstantial. Okay, so what Supreme Court case has said that in the context of medical malpractice? It did not say it in that context. However, and again I'll go back to what I said before, should this court adopt that rule specifically to develop an exception to this rule for medical malpractice, then it's going to apply to any number of different scenarios where expert's testimony is brought into play. And your honor, I think that the entire body of law on sole proximate cause would be turned on its head. It doesn't seem like it would have been too onerous to simply require an expert, whether it's your experts or plaintiff's experts, to answer a simple question. In your opinion, was Dr. Hawkins' surgery the sole proximate cause of this lady's death? The question was never asked by our counsel or opposing counsel. But I don't see how that matters given the current state of the law that requires only some evidence supporting our theory of the case that entitles us to that. So if that question was asked and the answer was no, your theory would be you'd still get the instruction, right? I don't believe it would be. I think that if we had if our own expert said that it's not the proximate cause, however... But you're basing it on a series of circumstances, not on an expert witness's testimony. You're saying that all of these various circumstances that occurred are sufficient and a jury should be able to figure that out. Yes, absolutely. Absolutely. I think that a jury can look at these facts and understand what happened there. A jury can understand that a known complication of every type does not, as Judge Foley put it, create an unbroken chain all the way to her demise. And that, I think, is the key error in Judge Foley's ruling, is that there is no unbroken chain. We don't have to go all the way back to the ERCP procedure because there's no evidence that there's... Substantial evidence that the pancreatitis could arise in the absence of negligence. But when the open abdominal surgery was performed, suddenly everything in this case changed. We went from a 3% mortality rate to a 50% mortality rate at coin toss. In a surgery that expert testimony said was unwarranted and should not have been done. I believe, yes, that is sufficient to... That more than satisfies the Supreme Court's rule that all we need to do is put forth some evidence supporting our theory of the case. No matter if it's unsubstantial, no matter if the court doesn't believe it. If we have evidence supporting our position, it should have been put before the jury. I'd also like to point out that the fact that the trial judge gave the instruction that basically said a person guilty of negligence cannot avoid responsibility merely because another person down the road is also negligent. That handcuffed the jury. If the jury believed that something went wrong here, well, the instruction that they were given prohibited them from looking at Dr. Hawkins. There's only one person left, and that's Dr. Edwards. He was found liable for negligence that he would play no part in and was then unable to prevent. Unfortunately, Mr. Unrath, your time is up, but you will have an opportunity in rebuttal. Thank you. Mr. Ginsky. Thank you, Mr. Court. Counsel, in this court's 2007 decision in the case of Barr v. A.R.T.H. v. State Farm Fire, this court ruled that errors in the viewing instructions constitute a ground for a new trial only if the parties rank that their trial has been seriously prejudiced. The two main arguments that the defendants are making in this case before this court is that, with respect to viewing instructions, the jury should not have been inspected on the period of 26 May 3rd, and the jury should have been inspected on the issue of civil proximity costs. Defendants can't possibly show prejudice arising from either of those two decisions concerning those specific jury instructions because the effect of those instructions is completely unknowable by this court or by anybody else. There was no special interrogatory that was presented to the jury with respect to the theory of racist soliloquy. And as we sit here today, we don't know what the jury's decision was. The verdict form is not segregated. It did not ask the jury to make a decision with respect to the issue of the count of racist soliloquy versus the count of traditional medical negligence. So we don't know what their decision was as a general verdict. It's unlikely, but it's conceivable that the jury, when they went back to the library, decided that racist soliloquy was off the count and returned their verdict on the general negligence counts. We can't possibly know, absent a special interrogatory, on that specific issue, racist soliloquy. Similarly, we can't know what effect, if any, the sole proximate cause instruction, the long form, would have had, absent a special interrogatory that specifically drills down on that issue. So in plaintiff's opinion, we know that this court can't possibly know what the effect of either of those instructions was. We're speculating. The defense is asking this court to speculate on those issues. Mr. Genske, I want to ask you about the racist counts and the evidence that was presented at trial on that. Mr. Unrath, we really kept Peg down with the sole proximate cause instruction, but on rebuttal, he can address this. The plaintiff alleged in her complaint that, or his complaint, that the race that was based on the perforation of the pancreas. Is that right? That's correct. Okay. In looking at the plaintiff's expert's testimony, it appeared that the racist question was in the context of perforation of the pancreatic duct. Is there a problem for the plaintiff in regards to the proof at trial of the racist accounts where it seems that the testimony related to perforation of the pancreatic duct. I think the question was phrased, and I don't have my hands on it right now, but can perforation of pancreatic duct occur in the absence of negligence? The plaintiff's expert said no. Is there a variance here that is a problem for Ray Sipson? No, I don't believe that there is. I don't quite understand your question. The location of where the perforation occurred. The plaintiff's expert was asked to answer a question that related to the pancreatic duct. The complaint alleged Ray Sipson based on perforation of the pancreas. That's correct. And in this court, as well as at the trial court level, the defendants were thinking with very broad brush strokes. And one has to drill down into the specifics of this case, as well as other cases involving ERCP. Asked in a general sense, without providing any context, can ERCP result in pancreatitis? The answer is yes, in a broad general sense. But one has to be very specific as to what the purpose of the ERCP was. Most commonly, that procedure is to retrieve a stone and a common vial duct. Rarely is the purpose of the ERCP to get into the pancreatic duct. But if that's the purpose of the procedure, it is going to result probably in some type of mild to moderate pancreatitis. Because the cannula and the guiding wire are stimulating the pancreas. That's going to cause the two biomarkers, lipase and amylase, to elevate. That generally is transient. That's not what happened here. We have to be careful, because Dr. John Legata, who was a 2013 F2 witness, not an F3 witness, not a hired expert. And Dr. Clark, who was Plans hired expert. Both are at teaching institutions. Dr. Clark at Indiana University Medical Center in Annapolis. Dr. John Legata at Washington University in St. Louis. What those two frequently do is perform an ERCP trying to get into the pancreatic, not the common vial duct, pancreatic duct. They do that most specifically because of damage caused by radiation or chemo treating pancreatic cancer. And they have to get in there and reduce the strictures that are formed as a result of the chemo or radiation. So to paint with broad strokes and say generally ERCP can result in pancreatitis is an irrelevant question in this context. Because here, the purpose was not to get into the pancreatic duct. In fact, it was to stay out of the pancreatic duct and find the guide wire and the cannula to the common vial duct and retreat what Dr. DeWood thought was a stone, which there was actually never any evidence of a stone. It just didn't exist. Can you bookmark where you're at in your argument? I just wanted to ask you a question that Mr. Unrath addressed in response to a question of mine. And that related to a concession made by a plaintiff's expert that perforation of the pancreatic duct can occur in the absence of negligence. He indicated that it could, that he had perforated the pancreatic duct before in his procedures and that can occur in the absence of negligence. And I asked about the context in which that question was asked. Was it in the context of ERCP? And I believe Mr. Unrath indicated that it was. Is there a distinction, an important distinction, I don't know, between whether or not the attempt is being made through the common vial duct in terms of cannulation or through the pancreatic duct when the perforation of the pancreatic duct occurred? What was the context of the question that was asked and in which the plaintiff's expert acknowledged that perforation of the pancreatic duct can occur in the absence of negligence? There was never context provided with respect to Defense Counsel's question in that regard. But you're absolutely right, Your Honor. Whether the procedure, whether the goal of the ERCP is to cannulate the pancreatic duct versus the common vial duct is absolutely critical. And you don't, absent negligence, you don't get a perforation of the pancreatic duct if your goal is to stay within the confines of the common vial duct. Just the stimulation, just the gut fire going into the pancreatic duct or the cannula itself, that can cause this transient spike in these two biomarkers, amyloids and monocytes, like I say, that's typically transient. And that generally does occur if the goal of the procedure is to get into that pancreatic duct and not into the common vial duct. But here, we didn't have just mild transient pancreatitis. We had the worst case of pancreatitis that most of these people have ever seen. I think the plaintiff in the trial itself, as well as in the briefs submitted by the court, pointed out the fact that these two biomarkers, that is a simple point of law, and they work for amyloids and monocytes. In this case, if the amyloids and monocytes is anywhere from three to five times normal, that suggests there's some type of pancreatitis going on. Here, both measurements were off the charts. Literally off the charts. They don't measure. There's no test that will confirm the presence of amyloids in excess of three times normal. And here, it was pegged at three times normal. That's only because there's no test that's used to determine that it's higher. So here, we didn't have just pancreatitis. We had severe necrotizing pancreatitis caused by a perforation of the pancreatic duct. Again, when the goal is to amylate the common myeloid duct, perforation of the pancreatic duct does not happen in the absence of necrotizing. It simply doesn't. But again, we're trying to speculate now about what effect that instruction had, or those instructions with respect to race absorber, that there had on the jury. We can't know because there was no special interrogatory to define that, to determine that. And with reference to Dr. Hawkins being the sole proximate cause, that simply cannot, cannot be the case, logically or physiologically or legally in this case. Mr. Kinski, one of your last points I want to follow up on. Is it necessary to have a special interrogatory to successfully appeal the failure to give a jury instruction that the evidence warranted given? I'm not going to be able to pick out a clear-cut example of that, but it would seem that there are any number of occasions where it should be obvious, based on the evidence presented, that an instruction was permissible, that the evidence supported the giving of an instruction and it wasn't given, and that that then would be error. Simply because no special interrogatory was given, is that then fatal to that party's chances on appeal? I believe that it is if it's a general verdict, Your Honor. If you're going to attack a general verdict, which was rendered in this case, and it's conceivable that, based on the evidence from the court, that the verdict would have been bifurcated with respect to the theory of racist subordinator and the theory of general negligence. If you have such a verdict, a non-general verdict, I suppose you could attack the instructions that were given on the basis that they obviously ended in some type of prejudice to the losing party. But when you have a general verdict, I don't see how you attack a general verdict absent a special interrogatory when you're saying this one specific instruction was so prejudicial it turned the outcome of the case. I don't see how you do that. But I wanted to return to Dr. Hawkins. Dr. Hawkins is an eminently qualified congenital biliary surgeon. He, too, was an F2 witness, not a retained witness. He said that there were two indications for the surgery, that the patient had a bowel obstruction which was not resolved and had to be addressed surgically, and secondly, that she had an infection. And there's never been a conception on the defense of this case that she actually had an infection. She did. It was a fungal infection. Infections can be viral, bacterial, or fungal. This was fungal. But she had a clear fungal infection. When you have an infected bronchic pancreas on top of the bowel obstruction, she wouldn't have survived a week had he not performed his surgery. And his surgery was in May. Her death was more than three months later. And Dr. Benthrom, the expert retained by the defense, the surgical expert, who said, well, and he was very obtuse in his testimony, very obtuse, I don't think she should have been taken to surgery at the point she was taken to surgery. But he never identified any medical sublime or etiology resulting from Dr. Klockman's surgery that caused her death. And I was looking again at the positive death as reported down in St. Louis at Washington University Medical Center. There was an autopsy performed by Dr. Julia Scandalberry, a board-certified forensic pathologist. And she concluded that the cause of death was sepsis resulting from severe necroplasm, pancreatitis, secondary kidney mercy. She, too, is an absolute witness. She's not a retained witness. Her opinions are formed long before the attorney and person involved in any type of litigation, long before there's a lawsuit. That was her opinion as documented in the autopsy. And was that presented as testimony? She testified by means of a legal paper. But consistent with what you just read? Yes, yes. In addition to that, going back to Dr. Hawkins, who, again, is an F2, not an F3 witness, not retained by either party, he independently signed the death certificate. And he said that the cause of death was sepsis, which was on the order of one week or so in duration,  So, and again, an F2 witness, certificate of death, both of those witnesses testified that the death was due to sepsis arising out of pancreatitis, secondary to an ERCP. That pancreatitis, Dr. DeWood admitted that was his first, the first series of questions asked on cross-examination. Isn't it true that this patient did not have pancreatitis before your procedure? Yes, that's true. Isn't it true that you had moderate to severe pancreatitis following your procedure? Yes, that's true. Isn't it true that it was your procedure that caused the pancreatitis? Yes, that's true. How in the world can you say that Dr. Hawkins, or anyone that occurred, at Washington University in St. Louis, as they were trying to save his wife, was the sole cause of her death? It just, it just can't, can't be. And this is a little bit controversial, but may I have a quote? I don't know that the horoscopic image from Dr. DeWood's procedure translated well into the brief. It's hard to manage those images. And these are in evidence? These are in evidence. This is, if I have to give it a... It's in your brief, isn't it? It is. It's a little hard to see. The other thing that I want to point out is the patient had had her gallbladder removed. The gallbladder empties into the common bile duct by means of what's called the cystic duct. And when the gallbladder is removed in this common cystectomy, the cystic duct is stapled shut with metal staples, and then the gallbladder is excised. The significance of that is you can see where those metal staples are on some instances, but they're not. That's where this guide wire should have been. And we know that it's not within the common bile duct because we've got a landmark with respect to those staples from the prior colic cystectomy. We also know that the guide wire is not within the confines of the pancreas or the pancreas because the pancreas is in a horizontal plane that crosses the spine behind the stomach. So, you know, there's an issue raised in defendant's brief that there's no evidence of perforation. The best evidence of perforation is the image taken by Dr. DeWitter during his procedure itself. Nobody's anatomy goes in the direction of this guide wire. Dr. Gore, who was a NF3 patient, but is eminently involved by a military local on gastrointestinal radiology, testified unequivocally that there was a perforation, unless there's any other evidence. I have one question. If we were to require an expert witness in order for the long-form proximate causal structure to be given, the counsel has argued that it would be contrary to the L1 Supreme Court cases I think he cited McDonald and Leonardi. What's your response to that? The claimant acknowledges that in order to make arguments with respect to causation, the defense doesn't have to produce evidence that somebody other than the main defendant violated the standard of care. But there has to be some evidence of causation. Again, we know that the sepsis arose from the pancreatitis. We know that the pancreatitis arose from Dr. Gore's procedure, that she didn't have pancreatitis before his procedure. We know that that caused her death. That means that Dr. Ventram, if I have a surgical expert, has to come up with something that occurred during Dr. Hawkins' surgery or that occurred during some other procedure at Washington University, that was an etiology listed either in the death certificate or the autopsy. Thank you. Excuse me, Dr. Genske. One other question, and it relates to the race of counts here and the testimony of trial. Was there more than this one question asked of Dr. Clark or any other expert witness at trial that would have allowed the jury to find in favor of plaintiff on the race of counts? And I'll quote from the transcript. The question, and ordinarily would a perforation of the pancreatic duct when you're simply trying to get into the common bile duct, just that perforation, does that normally not occur unless there is negligence? Answer, correct. Is that the extent of the evidence supporting the jury's verdict on the race of counts? Primarily, primarily, because, again, the fact that there was post-procedure period of time of standing alone doesn't answer any questions, and it's not specific enough in this case to provide any direction for the jury. What's significant is that there was perforation of the pancreas when it wasn't supposed to be on the pancreas. Any other comments? Thank you. All right, Mr. Getsky, thank you. Thank you. Mr. Unrath. Thank you. Let's go from where we started. It says that the pancreatitis can be, it would in this particular case, must have been caused by pancreas because the pancreatic duct was cannulated, and that flies in the face of virtually all of his own expert's testimony. Dr. Clark, when asked point blank, is it standard of care to stay out of the pancreatic duct, he said, well, no, that's the goal. He says, try to stay out of the pancreatic duct. It's not always possible. He also, Justice Harris, you mentioned his testimony that there is, a perforation can only occur when there's been negligence. Well, he kind of backed off of that later on. He admitted that he himself has perforated the pancreas and that it can happen, it can occur, in the absence of negligence. In specifically what context? When the surgeon is attempting to cannulate the common bile duct or the pancreatic duct, or was it placed in context at all? I don't know that it was placed in context because no one, all of the experts agree that it's very difficult to go into a common duct that divides into a Y, and it's very difficult to cannulate one or the other, and it is very common. When you're trying to go access the common bile duct, that you will enter the pancreatic duct, and particularly in this case. Now, that was explained by numerous experts in this case, and the standard of care is you try. You try to avoid the pancreatic duct. It's not always possible, and what you do is you change, no, no, no, I'm beginning to lose my terminology, but the cannula, the sphincter tum, I believe it's called, you try different sizes, different shapes. You try manipulating the patient, putting them in different positions, and if you're unsuccessful, you stop, and that's precisely what happened here. It does happen. The pancreatic duct is accessed quite often. It's a normal complication or a normal result of the RCP procedure. Now, there's another big point. I'd really like to stress here is that pancreatitis can result from the ERCP procedure, even if you don't cannulate either of the ducts. Nearly attempting the procedure, the ampulla is so small, and you're trying to access this with the sphincter tum the size of a human hair, less than the size of a human hair, and yet that is still sufficient aggravation to cause swelling and ultimately pancreatitis. But wasn't the testimony that the severity of the pancreatitis increases when there's a perforation of the pancreas? I'm not aware of that testimony. I'm just looking at plaintiff's brief, page 7, and citing to the record, page 755, this would have been Dr. Clark's testimony, that the severity of pancreatitis goes up dramatically once the pancreas has been perforated. There aren't quotation marks around that, so it's paraphrasing. Would you say the record does not bear that out? I don't recollect that. I'm not prepared to recite it. I'd have to check the citation of the record on that. If it's accurate, then how does that impact on what you're arguing here? Not at all, because Dr. Clark also testified that he himself has perforated the pancreas, and it can be done in the absence of negligence. There was also an indication or a suggestion that this is the worst case of pancreatitis anyone had ever seen. Well, why did Barnes-Jewish Hospital discharge her after seven days? Why is it that her condition was improving, steadily improving, and her condition was stable at the time that they performed the open abdominal procedure? That doesn't quite make sense. I don't see that at all. Well, earlier on, we talked about whether there had been expert testimony stating that this was a proximate cause. No, we don't have it. But we do have this testimony from Dr. Ventram, and he said that performing the open procedure led down the wrong path, ultimately leading to her death. That was the closest we could come. And that is substantial enough. That is some evidence supporting this obstruction for the sole cause obstruction, and it was provided by an expert witness. What was that expert again? I know you just said Dr. Ventram. Okay, thank you. Are there no further questions? I see none. Mr. Onrath, thank you very much. Counsel, thank you. This matter will be taken under advisement.